## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:14-cr-321-WSD |
| TAVARIS CHAVEZ WILLIAMS, | |
| Defendant. | |

## OPINION AND ORDER

The matter is before the Court on Defendant Tavaris Williams'
("Defendant") Objections [36] to Magistrate Judge Gerrilyn G. Brill's Report and
Recommendation ("R&R") [33].  The R&R considers Defendant's Motion to
Suppress Statements [10] and Motion to Suppress Evidence and Statements [12],
in which Defendant seeks to suppress evidence and statements on the grounds that
his constitutional rights to be protected against unreasonable searches and seizures
and against self-incrimination were violated.  The Magistrate Judge, having
conducted an evidentiary hearing on October 29, 2014 (the "Evidentiary
Hearing"), recommends that Defendant's Motions be denied.

## I.      BACKGROUND

Defendant is charged with possession of a firearm by a convicted felon, in
violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and possession of a stolen firearm,

in violation of 18 U.S.C. § 922(j).  The charges arise from the discovery of a

firearm in Defendant's possession on April 23, 2014.[1]

On April 23, 2014, Atlanta Police Officers Caleb Munson and Jones

responded to a 911 dispatched call about conduct at 583 Boulevard.  Officer

Munson is assigned to the Zone 6 Boulevard Crime Suppression Unit that polices

in the Boulevard and Parkway areas (the "Boulevard Area").  Wingate Properties

own a number of apartment buildings in the Boulevard Area, including a building

located at 583 Boulevard (the "583 Building").  The 583 Building is a two-story

structure.  In the middle of the building is an entrance and stairs from which to

access long interior hallways on either side of the stairwell.  Individual apartments

are accessed from the interior hallways.  There are significant law enforcement

problems at Building 583, which Officer Munson described:

> [W]e've had a lot of problem with drugs.  Like, a lot of narcotic
> problems; violent crimes right there.  A lot of fights, disputes over
> drugs.  We've actually, I think, had some shootings at that building or
> right at that block.

---

[1]     Defendant appears to assert an objection to the facts set out in the R&R, essentially claiming the facts are not set out completely.  Defendant, in his objections, sets out the majority of the facts presented at the evidentiary hearing. Defendant only occasionally refers to an added fact in the arguments he presents in his objections, leaving the Court to determine which of the other added facts are germane or material to the Court's *de novo* review.  Defendant's kitchen sink approach to the facts and his objections generally were not helpful to the Court's consideration of his Objections, or its review of the R&R.

(Tr. of Hr'g [23] at 5).  In responding to the call about Building 583, Officer

Munson stated:

> And the call also came up that you can come through the front or
> the back door, because pertaining to that area, they usually run
> from us in the hallways.  And there is a lot of known gambling and
> drugs in the hallways.

(Id. at 6).  Officer Munson noted there are signs above doorways of the Wingate

apartment buildings that say, "No gambling, no drinking, no drugs."  (Id. at 4).

In dispatching Officers Munson and Jones, the dispatcher reported there

were five (5) males smoking drugs in the hallway of a building the 583 Building.

(Id. at 6).  Officers Munson and Jones went to the building and parked outside,

where they could see smoke coming from the front entrance.  (Id. at 7).  They

entered through the front door of the building.  As they opened the door, smoke

was expelled from the building.  Once inside, they saw five (5) males in the

hallway, including one sitting on the stairs.  When asked what they were doing,

one of the males stated: "we're smoking."  (Id. at 9).  Officer Munson described

the smoke in the hallway as very, very thick.  (Id.).  He also stated that he saw

discarded tobacco pieces from tobacco products which are commonly stuffed with

marijuana to be smoked, and he saw loose marijuana on the ground and on the

clothes of some of the individuals in the hallway.  (Id. at 32).  Based on what they

observed before and after entering Building 583, and their encounter with the

individuals who were smoking, Officer Munson first detained the individual he expected to run, and then detained Defendant.  (Id. at 11).

The seated individual and Defendant were handcuffed first, and then the other three individuals were handcuffed.  After the individuals were detained, Officer Munson proceeded to engage in the process of patting them down.  (Id. at 12).  As Officer Munson approached Defendant[2] to pat him down, he asked Defendant if he had "anything illegal" on him.  Defendant responded, "I have a pistol in my right front pocket."  (Id. at 12, 39).  Officer Munson stated that he did not see a gun, or the outline of a gun, and before Defendant's statement, he did not have reason to believe Defendant had a gun.  (Id. at 44).  After Defendant disclosed he had a gun on him, Officer Munson removed a pistol from Defendant's right cargo pants pocket.  (Id. at 12).  Officer Munson asked Defendant if he was a convicted felon.  Defendant stated that he was and stated that he had just gotten out of prison.  (Id. at 13).  As they were leaving Building 583, Officer Munson advised Defendant and the others in the group that they were under arrest for criminal trespass because "they were not supposed to be on the property, and they were in there for unlawful purposes with the marijuana, paraphernalia and everything."  (Id. at 14).

---

[2]     Officer Jones was responsible for detaining others discovered in the hallway.  (Id. at 39).

After his <u>Miranda</u> rights were read to him, Defendant stated he wanted to speak with Officer Munson.  Defendant stated that the pistol that was in his pocket, "he bought from somebody on a Marta [sic] train, or a bus, for $300, in Decatur" (the "MARTA Statement").  (<u>Id.</u> at 17).

On August 28, 2014, after Defendant was indicted by a federal grand jury on firearm charges, Kenneth Fisher, an Atlanta Police Officer assigned to a federal task force ("Officer Fisher"), met with Defendant to interview him.  (<u>Id.</u> at 66 & Def's Ex. 15).  The interview was recorded and the first few minutes focused on Defendant's biographical and emergency contact information.  (<u>Id.</u> at 70-71).  Officer Fisher showed Defendant the warrant that had been issued for his arrest after he was indicted on federal charges.  (<u>Id.</u> at 68).  Defendant asked about his designation in the warrant as an "armed career criminal."  (<u>Id.</u> & Def's Ex. 15 at 06:00-06:05).  Officer Fisher told Defendant he could not respond to Defendant's question because Defendant had not been read his <u>Miranda</u> rights. Defendant asked again about the armed career criminal designation and said he wanted to talk about it.  Defendant thereafter was read his <u>Miranda</u> rights and he agreed to talk.  (<u>Id.</u> at 60-61).  Defendant stated that the gun belonged to a friend of his, and he "just had it," that he bought the gun for a friend named Joe and that he

5

kept the gun because Joe never paid him for it (the "Joe Statement").  (Def's Ex.

15 at 14:15-14:44; 19:10-19:30; 25:36-25:44).

On September 12, 2014, Defendant filed his Motion to Suppress Statements

[10] and Motion to Suppress Evidence and Statements [12].  Defendant argues that

he was seized and searched without reasonable suspicion of criminal activity in

violation of the Fourth Amendment, was arrested without probable cause, and that

any statement Defendant made or evidence that was found on him following his

alleged unconstitutional detention or arrest, is required to be suppressed.

Defendant also argued that his statements were made in violation of his rights

under Miranda.  In her R&R, the Magistrate Judge recommends that Defendant's

Motions be denied, including on the ground that Defendant's detention or arrest

was not in violation of his Fourth Amendment or other claimed constitutional right.

On March 26, 2015, Defendant filed his Objections to the R&R.  In his

Objections, Defendant notes that his original Response [24] and Reply [32] in

support of his Motions "set[] forth his factual arguments and the legal authority

supporting them" and he wholesale "incorporates by reference those arguments

and [wholesale] objects to the Magistrate's ruling on those grounds."  (Obj. at 3).

Defendant then offers a list of "Specific Objections," which generally point out

facts that were not included in the R&R.  (Id. at 4-5).  Defendant objects to the

R&R, pointing out:

> 1.  Details about the information communicated in the original 911 call that resulted in Officer Munson's and Jones' dispatch to Building 853 and physical details regarding the apartment building location and configuration.
>
> 2.  Details about the location of the males in the hallway and that one of the five males encountered was a juvenile that had been arrested previously.
>
> 3.  That Officer Munson did not try to identify the anonymous caller who reported to 911 that the males were using drugs in the hallway.
>
> 4.  Officer Munson did not see any of the males in the hallway with a marijuana joint in their hands and did not see a cigarette, cigar, or other form of tobacco or paraphernalia.
>
> 5.  Officer Munson did not believe that any of the males "lived [at the apartment building]" and did "not know who lived in the units that connected to that foyer" and did not ask Defendant "whether he lived there or had a reason to be there."

(Id.).  Within the Specific Objections, Defendant also states that Officer Munson's

testimony that he smelled raw marijuana was "incredible if there was burning

marijuana streaming from under the door and thick smoke in the foyer to which he

also testified."  (Id. at 5).

In addition to these Specific Objections, Defendant reiterates the arguments

he made previously, stating his objection to the Magistrate Judge's finding that he

was lawfully detained in the apartment hallway on April 23, 2014, and the

evidence seized from, and the statements made by, Defendant after the detention

are admissible.  He objects also to the alternative finding in the R&R that
Defendant was arrested by Officer Munson in the hallway of Building 583, and
thus was lawfully searched incident to arrest.  He objects to the Magistrate Judge's
finding that the statements he made at Building 583 and during the interview with
Officer Fisher are admissible.  Defendant argues the statements he made were
derived from his unconstitutional detention or arrest and thus are required to be
suppressed as fruit of the poisonous tree.  Defendant also argues that his statement
to Officer Fisher was obtained in violation of <u>Miranda</u>.

## II.   STANDARD OF REVIEW

After conducting a careful and complete review of the findings and
recommendations, a district judge may accept, reject, or modify a magistrate
judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59;
<u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A
district judge "shall make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection is made."
28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh
consideration to those issues to which specific objection has been made by a
party."  <u>Jeffrey S. v. State Bd. of Educ. of Ga.</u>, 896 F.2d 507, 512 (11th Cir. 1990)
(internal citations omitted).  With respect to those findings and recommendations

to which a party has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## III.    DISCUSSION

### A.    Objections to the facts

Defendant states various "Specific Objections" to the facts, which the Court summarized above.  Defendant does not object to any specific factual finding in the R&R, and appears to argue that the additional facts he cited in his Objections compel findings and recommendations different from those found by the Magistrate Judge.  Because the facts cited in the Specific Objections do not conflict with those set out in the R&R and are supported by the record of the Evidentiary Hearing, the Court will consider these additional facts in conducting its *de novo* review.[3]  The Court also has independently reviewed the evidence in the record, including the transcript of the Evidentiary Hearing, in conducting its *de novo* review.

---

[3]    Defendant appears to assert that Officer Munson's credibility was undercut by his testimony that he smelled raw marijuana when he was at Building 583. Defendant argues that if the smoke was pervasive, Officer Munson would have been unable to smell raw, un-burnt marijuana.  There is no basis for this claim and it does not on its own render Munson's testimony unbelievable.

B.    Detention of Defendant on reasonable suspicion

A defendant who claims his rights under the Fourth Amendment to the United States Constitution were violated has the initial burden to show that a warrantless search or seizure occurred.  United States v. Bachner, 706 F.2d 1121, 1125-26 (11th Cir. 1983).  Whether a seizure has occurred is evaluated from the perspective of the person claiming the violation of the Fourth Amendment.  The Supreme Court has said: "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."  United States v. Drayton, 536 U.S. 194, 201 (2002).  The Eleventh Circuit has said that a seizure occurs under the Fourth Amendment where police use force or a show of authority to restrain a person's freedom of movement.  United States v. Perez, 443 F.3d 772, 778 (11th Cir. 2006).  Here, the Magistrate Judge found that Officer Munson had seized Defendant when he approached Defendant and instructed him to place his hands behind his back.  Defendant and the Government do not object to this finding and, upon plain error review, the Court adopts the Magistrate Judge's finding that a seizure occurred when Defendant was asked to place his hands behind his back.

The next issue is whether Officer Munson's seizure of Defendant violated the Fourth Amendment.  The question is whether Officer Munson had reasonable

suspicion to conduct an investigative stop, probable cause to arrest, or both.

Probable cause is not necessary under the Fourth Amendment to conduct an investigative stop. A police officer may conduct an investigatory stop of a person if there is reasonable suspicion that the person has engaged, or is about to engage, in criminal activity. United States v. Arvizu, 534 U.S. 266, 273 (2002); Terry v. Ohio, 392 U.S. 1, 21 (1968). Reasonable suspicion requires less proof than a finding of probable cause. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). The Supreme Court and the Eleventh Circuit have held that "the 'risk of harm' to officers is 'minimized' when police officers 'exercise unquestioned command of the situation.'" United States v. Clark, 337 F.3d 1288, 1287 (11th Cir. 2003) (quoting Michigan v. Summers, 452 U.S. 692, 702-703 (1981)).

Whether reasonable suspicion exists is determined by considering the totality of the circumstances and whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. Arvizu, 534 U.S. at 273. In determining whether there was reasonable suspicion to detain, "[g]reat deference is given to the judgment of trained law enforcement officers 'on the scene.'" United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003); see also United States v. Griffin, 696 F.3d 1354, 1360 (11th Cir. 2012). Whether conduct

11

is suspicious may take into account that the conduct observed occurred in a high crime area.  United States v. Gordon, 231 F.3d 750, 755 (11th Cir. 2000).[4]  That is, the "reputation of an area for criminal activity may be considered when determining whether circumstances are 'sufficiently suspicious' to warrant further investigation."  United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (citing Gordon, 231 F.3d at 755-56).  "[A]n individual's proximity to illegal activity may also be considered."  Id.  "Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'"  Id. (quoting Terry, 392 U.S. at 27).

It is also well-established that "mere police questioning does not constitute a seizure" implicating the Fourth Amendment.  Griffin, 696 F.3d at 1360 (citing Muehler v. Mena, 544 U.S. 93, 101 (2005)); see also Arizona v. Johnson, 555 U.S. 323, 333 (2009) (officer's inquiry into matters unrelated to the justification for the stop does not convert stop into something other than a lawful

---

[4]     Officer Munson's testimony that the apartment complex had a history of drugs and violence supports that it was a high crime area (Tr. at 6-7), and further supports his reasonable suspicion that criminal activity was afoot.  See Hunter, 291 F.3d at 1306; Gordon, 231 F.3d at 757 (same); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("We have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a Terry analysis.") (citing Adams v. Williams, 407 U.S. 143, 144 (1972)).

seizure if questioning does not measurably extend the length of the stop).  The

Eleventh Circuit has squarely held that an officer's questions during a stop, even if

unrelated to the matter investigated, "do not create a Fourth Amendment problem

unless they 'measurably extend the duration of the stop.'"  Id. at 1362 (quoting

Johnson, 555 U.S. at 333).  "This is because such questions, absent a prolonged

detention, do not constitute a 'discrete Fourth Amendment event.'"  Id. (quoting

Mena, 544 U.S. at 101).

The Eleventh Circuit's opinion in Griffin is instructive.  In Griffin, a police

officer responded to an unverified 911 call from a clothing store.  Id. at 1357.  The

officer was familiar with the area of the store and knew there were drug activities

and burglaries in the area.  Id.  Once at the store, a security guard told the officer

that a man had tried to steal some clothes and he pointed to a man walking away.

Id.  There were six to eight people in the direction that the guard pointed, but only

Griffin met the description of the man who tried to steal clothes.  Id.  The officer

returned to his vehicle and followed Griffin.  Id.  As he did, Griffin walked briskly

and looked over his shoulder as he walked.  Id.  The officer got out of his car and

told Griffin to stop, a command Griffin disobeyed.  Id.

The officer approached Griffin, put both hands on Griffin's wrist and told

him he was investigating a petty theft.  Id.  Griffin denied stealing anything.  Id.

The officer "nevertheless frisked Mr. Griffin to ensure his own safety." Id. During the frisk, the officer felt what he thought were C-cell batteries in Griffin's pocket. Id. He did not, however, reach into the pocket, but asked Griffin: "Hey, what's in your pocket? Why do you have batteries?" Id. Griffin responded that the items were shotgun shells and not batteries. Id. The officer then asked Griffin if he had ever been to prison. Id. Griffin responded that he had. Id. The officer told him it is illegal for felons to possess weapons or ammunition, and Griffin fled. Id. He was later arrested and charged with being a felon in possession of ammunition. Id.

Griffin moved to suppress the ammunition and his statements in response to the officer's questions. Id. at 1358. The district court found the initial stop valid, but that the questions asked of Griffin constituted an unreasonable search, finding the officer's questions "constitutionally invalid." Id. The district court granted Griffin's motion to suppress. Id. The Eleventh Circuit reversed on the ground that the officer who frisked Griffin and asked him questions about the "batteries" had reasonable suspicion to conduct an investigatory stop. The Court held:

> To the extent that it believed that [the officer's] questions constituted a search under the Fourth Amendment, the district court was mistaken. Whatever else they might be, questions posed by a police officer to a suspect about what he has in his pocket and whether he has been to prison are not, in the Fourth Amendment sense, a search. "In context, these sorts of questions are not the verbal equivalent of reaching into a suspect's pockets to remove the contents, or the same as ordering a suspect to 'empty his pockets' in the midst

14

> of a protective frisk."  "Sometimes a question is just a question—an
> eminently reasonable question at that.  That is all that happened here."

Id. at 1362-63 (citations omitted).

The reasoning and holding in Griffin apply here.  Building 583 was an area
where the police had experienced a lot of problems with narcotics and violent
crimes, including shootings and fights.  (Tr. at 5, 6).  The area qualified as a high
crime area.  Officers Munson and Jones received a dispatch based upon a 911 call
that there were five males at Building 583 using drugs, one of the recurring law
enforcement problems in the area.[5]  They traveled to the building and when they
parked outside of it they could see smoke coming from the front entrance.  (Id. at
7).  They entered through the door, and when they did, smoke came out of the
door.  Once inside, they observed five males in the hallway, including one sitting
on the stairs.  The officers asked what they were doing and one of the males stated:
"we're smoking."  (Id. at 9).  Officer Munson described the smoke in the hallway
as very thick.  (Id.).  He also saw discarded tobacco from mouth pieces of tobacco
products which are commonly stuffed with marijuana to be smoked, and he saw
loose marijuana on the ground and on the clothes of the individuals in the hallway.
What the males were smoking smelled like marijuana and the other evidence

---

[5]     Defendant, in his Objections, adds additional information about the content
of the 911 call.  The record does not support that this information was passed on to
Officer Munson when he and Officer Jones were dispatched.

observed supported that it was marijuana.  Considering the circumstance under which the individuals were encountered, and the evidence of marijuana in the hallway coupled with the admission the individuals were smoking, Officer Munson detained the individual he expected to run first and then he detained Williams.[6]  He had ample evidence to support a reasonable suspicion to do so.  See Arvizu, 534 U.S. at 273; Hunter, 291 F.3d at 1306-1307; Chanthasouxat, 342 F.3d at 1276.

Considering the crimes that Officer Munson knew had occurred in the building in the past, the presence of smoke which he detected was from marijuana, the presence of material consistent with a kind of marijuana delivery device, and observing marijuana on the floor and on the clothes of at least some members of the group—of which one member admitted was "smoking"—there was sufficient support for the detention of Defendant.  Defendant agrees that "a brief

---

[6]      On the facts here and based on the law in this circuit, had Officer Munson chosen to frisk Defendant at this point, the facts would support that a reasonable officer would have had a legitimate concern for his safety, and the safety of Jones, the other males present and the persons living in the building.  See, e.g., United States v. Hastamorir, 881 F.2d 1551, 1556-57 (11th Cir. 1989) (where officers reasonably believed individuals presented potential threat to their safety, handcuffing individuals was reasonable to provide for their safety and constituted a valid Terry stop); United States v. Kapperman, 764 F.2d 786, 790 n.4 (11th Cir. 1985) (police may take reasonable action to protect themselves during investigative detentions, including handcuffing an individual; handcuffing does not automatically convert an investigative detention into an arrest).  Instead, Officer Munson exercised restraint, choosing instead to ask a simple question directly related to the reason for the stop.  He simply got an answer he did not expect.  See Griffin, 696 F.3d at 1362-64.

investigatory detention of those present in the foyer was permissible upon observing smoke and smelling marijuana." (Obj. at 13).  The Court, upon its *de novo* review, finds there was reasonable suspicion that Defendant had engaged or was about to engage in a crime.  The Court overrules Defendant's objection to the Magistrate Judge's finding that the detention was not in violation of Defendant's rights under the Fourth Amendment.  See Arvizu, 534 U.S. at 273; Terry, 392 U.S. at 21.

That Officer Munson asked Defendant whether he had anything illegal was simply a reasonable, logical question to ask when investigating a report of illegal drug possession and use.  The context of facts supported—strongly—that the five males were "smoking," the substance they were smoking was marijuana and thus they possessed and were using an illegal substance.  On the facts here, Officer Munson was allowed to ask the question he posed, and once Defendant responded that he possessed a pistol, and that he was a convicted felon, Officer Munson had probable cause to arrest Defendant and it was reasonable to seize the pistol.[7]

---

[7]     An arrest of a person requires probable cause to believe that a crime has been committed.  Probable cause exists to make a warrantless arrest "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that [a] suspect had committed or was committing a crime." United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)).  Whether probable cause exists is evaluated based on the "totality of the

C.     Post-arrest statements to Officers Munson and Fisher

After Defendant was arrested and taken to the precinct, Defendant was read

his Miranda rights by Officer Munson.  (Tr. at 14).  After having been read them,

Defendant told Officer Munson that he wanted to talk about the pistol.  Defendant

---

circumstances." Illinois v. Gates, 462 U.S. 213, 233 (1983).  A determination of
probable cause is validly made "when the facts and circumstances within [an]
officer's knowledge, of which [the officer] has reasonably trustworthy information,
would cause a prudent person to believe, under the circumstances shown, that [a]
suspect has committed . . . an offense."  Lee v. Ferraro, 284 F.3d 1188, 1195
(11th Cir. 2002).

In Georgia, it is a crime to possess marijuana in any amount.  O.C.G.A
§§ 16-13-2(b), 16-13-30(j).  Joint and constructive possession of marijuana is
prohibited.  McNeal v. State, 756 S.E.2d 660, 665 (Ct. App. Ga. 2014).  The
circumstances here support that there was probable cause to arrest Defendant.
Defendant was present in a group of four other individuals in a relatively confined
interior space of a building.  Before arriving at the building Officer Munson
observed smoke emitting from the door behind which the group was gathered.
When the door was opened, more smoke, which Officer Munson identified as from
marijuana, was released from where Defendant and the other four males were
sitting and standing.  After entry, when asked what they were doing, one of the
males—not Defendant—stated they were smoking.  Officer Munson saw
marijuana on the floor and on some of the other males' clothes, and he saw loose
tobacco on the floor, believing they had used cigar holders or wrappers as
marijuana delivery devices.  On these facts, Officer Munson had probable cause to
arrest Defendant for possession and use of marijuana, even though Defendant was
not seen in the actual possession of marijuana.  See Lee, 284 F.3d at 1194.  Once
arrested, Officer Munson had authority to conduct a pat-down search for weapons
which would have disclosed the pistol Defendant possessed, had Defendant not
volunteered his possession of the weapon.  Similarly, Officer Munson had probable
cause to arrest Defendant for trespassing on the property.  Finally, and certainly,
Officer Munson had probable cause to arrest Defendant when he volunteered he
had a pistol and had just gotten out of prison.

stated that the pistol that was in his pocket "he bought it from somebody on a Marta [sic] train, or a bus, for $300, in Decatur." (Id. at 17).

Still later, on August 28, 2014, after Defendant had been indicted on federal charges, Officer Fisher met with Williams to interview him.  The interview was recorded and the first few minutes focused on Defendant's biographical and emergency contact information.  Officer Fisher showed Defendant warrant that was issued for his arrest after he had been indicted on federal charges.  Williams asked about his designation in the warrant as an "armed career criminal."  Officer Fisher told Defendant he could not respond because Defendant had not been read his Miranda rights.  Defendant asked again about the armed career criminal designation and said he wanted to talk about it.  Defendant was read his Miranda rights and he agreed to talk.  He told Officer Fisher that the gun belonged to a friend of his and he "just had it," that he bought the gun for a friend named Joe, and that he kept the gun because Joe never paid him for it.

These statements were made after Defendant had been initially lawfully detained, then lawfully arrested and, in the case of the Joe Statement, lawfully indicted by a federal grand jury.  Each of these statements was made by Defendant after he was read his Miranda rights, first by Officer Munson before the MARTA Statement, and later by Officer Fisher, before the Joe Statement.  On each

occasion, after his rights were read, Defendant stated he wanted to talk about the gun, did not request a lawyer, and then made the statements explaining where he got the firearm and why it was in his possession.  Each of these statements was made by Defendant after a proper advisement of his rights and the Court finds, on its *de novo* review, that they are not required to be suppressed.  The Court overrules Defendant's objection to the finding and recommendation in the R&R that they should not be suppressed.

## IV.   CONCLUSION

The Court, having conducted its *de novo* review of the findings and recommendations in the R&R to which Defendant objected, and having reviewed the remainder of the R&R for plain error, for the reasons stated above,

**IT IS HEREBY ORDERED** that Magistrate Judge Gerrilyn G. Brill's Report and Recommendation [33] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Objections [36] to the Magistrate Judge's Report and Recommendation are **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant Tavaris Williams' Motion to Suppress Statements [10] and Motion to Suppress Evidence and Statements [12] are **DENIED**.

**SO ORDERED** this 21st day of July, 2015.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE